UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

| | |
|---|---|
| C-MART HERALD STREET, INC. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMTRUST FINANCIAL SERVICES, INC., | ) |
| as successor in interest to PUBLIC SERVICE | ) |
| INSURANCE COMPANY and MAGNA CARTA | ) |
| COMPANIES, INC., | ) |
| Defendants. | ) |

**COMPLAINT AND JURY DEMAND**

NOW COMES the plaintiff, C-Mart Herald Street, Inc. ("C-Mart"), and through its attorneys, McGovern, Houston & Ganem, P.C., alleges as follows:

**PRELIMINARY STATEMENT**

**NATURE OF THE CASE**

1. Between September 9, 2014 and September 9, 2015, Public Service Insurance Company ("Public Service"), unfairly and deceptively collected insurance premium payments from C-Mart with respect to insurance for C-Mart's premises at 10-18 Beale Street, Quincy, Massachusetts (the "Insured Premises"), without ever intending to provide insurance benefits for any covered losses involving the Insured Premises.

2. The primary purpose of Public Service's unfair and deceptive scheme was to improperly obtain insurance premiums from C-Mart without conducting an inspection of the insured premises prior to binding coverage and thereafter, based on alleged pre-existing hazards or conditions, deny coverage for damage resulting from a collapse of the roof of the building at the Insured Premises on March 9, 2015.

3. Public Service also engaged in unfair and/or deceptive insurance claims handling practices by disclaiming coverage for a loss occurring on or about March 9, 2015 at the Insured Premises, by:

   a. intentionally relying on a clear misrepresentation of insurance policy provisions to improperly deny C-Mart's claim for damage to the Insured Premises;

   b. failing to conduct a reasonable investigation into the cause and origin of the reported loss; and

   c. failing to effectuate a prompt, fair and equitable settlement of a claim in which liability was reasonably clear.

4. Upon information and belief, at all times relevant, Magna Carta Companies, Inc. ("Magna Carta") was the parent company of Public Service.

5. Upon information and belief, AmTrust Financial Services, Inc. (AmTrust") is Public Services' successor in interest.

## NATURE OF THE ACTION

6. This action is brought pursuant to Massachusetts General Laws, Chapter 93A, Sections 2 and 11.

## NATURE OF THE RELIEF SOUGHT

7. As a result of the unfair and deceptive conduct of Public Service, Magna Carta and AmTrust (collectively "Defendants) set forth in this Complaint, C-Mart seeks damages arising from:

   a. The cost to demolish the Insured Premises, $200,000.00;

   b. The loss in the value of the Insured Premises, $657,100.00; and

    c. All legal expenses, including attorney's fees, incurred by C-Mart in instituting this litigation.

8. Pursuant to M.G.L. c.93A, §11, C-Mart seeks treble the damages it has sustained as a result of Defendants' unfair and deceptive insurance claims handling practices, by which:

   a. Defendants improperly obtained unwarranted premium insurance payments from C-Mart with no intent of providing coverage for any claimed losses; and

   b. C-Mart was caused to incur unwarranted expenses, including, but not limited to, legal fees, in order to recover benefits for a covered loss.

## PARTIES

9. The Plaintiff, C-Mart, is a corporation incorporated under the laws of the Commonwealth of Massachusetts, having its principal place of business at 50 Herald Street, Boston, Massachusetts.

10. Defendant, AmTrust is a corporation incorporated under the laws of the State of Delaware, having its principal place of business at 59 Maiden Lane, 43rd Floor, New York City, New York.

11. Defendant AmTrust, upon information and belief, is the successor in interest to the assets and liabilities of Public Service, formerly a corporation incorporated under the laws of the State of Illinois having its principal place of business at 10 South Riverside Plaza, Suite 875, Chicago, Illinois.

12. Defendant. Magna Carta, upon information and belief, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business at One Park Avenue, New York City, New York.

13. Upon information and belief, as of March 9, 2015, Magna Carta had controlling interest in Public Service, made underwriting decisions for Public Service, handled claims investigations for Public Service, was the parent company of Public Service and/or was materially affiliated with Public Service.

## JURISDICTION AND VENUE

14. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332. C-Mart is a corporation incorporated under the laws of the Commonwealth of Massachusetts having its principal place of business in Massachusetts. AmTrust and Magna Carta are corporations incorporated under the laws of the State of Delaware having their principal places of business in the State of New York. Public SI was an Illinois corporation as of March 9, 2015 having its principal place of business in the State of Illinois. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00, as specified in 28 U.S.C. §1332.

15. Venue is appropriate under 28 U.S.C. §1391, as all the events or omissions giving rise to the claims occurred, and the property that is the subject of the action is situated, in this judicial district.

## STATEMENT OF THE FACTS

16. C-Mart repeats and realleges Paragraphs 1 through 15 of its Complaint, as if fully set forth herein.

17. As of March 9, 2015, C-Mart owned the Insured Premises and insured it under a Commercial Property Insurance Policy (CP011739) issued by Public Service with coverage effective dates of September 9, 2014 to September 9, 2015 (the "Policy").

18. The Insured Premises was specifically identified on the declarations page of the Policy, and provided a building coverage limit of $2,228,537.00 for the Insured Premises in exchange for an annual premium of $4,747.00 from C-Mart. Public Service also provided commercial property insurance coverage for C-Mart's other properties located in Massachusetts, and the total annual premium for all of the C-Mart properties was $32,353.74.

19. C-Mart made timely payment of the full premium of $4,747.00 to Public Service pertaining to the Insured Premises.

20. Upon information and belief, prior to binding coverage for the Insured Premises, neither Public Service nor Magna Carta, arranged for, or conducted an inspection of the Insured Premises.

21. However, on or about August 13, 2014, Public Service and/or Magna Carta did inspect another property, 50 Herald Street, Boston, Massachusetts, owned by C-Mart and insured under the Policy, and made recommendations, via a letter dated August 27, 2014, to correct "hazardous conditions that can result in severe claims and damage to the property."

22. In the August 27, 2014 letter to C-Mart, Public Service and/or Magna Carta indicated that if C-Mart did not contact Public Service and/or Magna Carta by September 26, 2014 and advise that all the recommendations for the correction of the identified "hazardous conditions" at the 50 Herald Street property, had been completed, Public Service and/or Magna Carta would "re-evaluate [their] underwriting decision."

23. Under the Policy issued to C-Mart, specifically the Commercial Property Form (CP 10 30 06 95) entitled, Causes of Loss-Special Form, Public Service agreed to pay for direct physical loss to the Insured Premises unless the loss was excluded in Section B, entitled, Exclusions or limited in Section C, entitled, Limitations.

24. The Exclusions section of the Policy provides, in pertinent part, that Public Service will not pay for loss or damage caused by:

> d. (1) wear and tear;
> (2) rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
> . . .
>
> k. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in the Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

25. Under the Additional Coverage - Collapse section, Public Service agreed to "pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of the building insured under this Coverage Form, if the collapse is caused by one or more of the following:

> a. The "specified causes of loss" or breakage of glass, all only as insured against in this Coverage Part;
> b. Hidden decay;
>
> …
>
> e. Weight of rain that collects on a roof;

26. The "specified causes of loss" are defined as "Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; *weight of snow, ice or sleet*; water damage." (Emphasis supplied).

27. On March 9, 2015, the roof of the building at the Insured Premises collapsed and C-Mart reported that it believed that the collapse was caused by the weight of an accumulation of snow.

28. Public Service and/or Magna Carta were immediately advised of the event and its probable cause.

29. As part of Public Service and/or Magna Carta's investigation into the claim, an engineer was retained by Public Service and/or Magna Carta to determine the proximate cause of the loss.

30. On May 15, 2015, Public Service and/or Magna Carta notified C-Mart that it was disclaiming coverage for the loss based on the findings of the engineer it had retained and who concluded that the roof collapse was due to the advanced decay of the wood and metal that was caused by years of continuous exposure to water (a pre-existing condition), an alleged coverage exclusion.

31. Public Service and/or Magna Carta's position was clearly made in bad faith, and with the intent of wrongfully denying a covered event, as the aforementioned Additional Coverage – Collapse provision in the Policy clearly states that Public Service will "pay for direct physical loss or damage to [Insured Premises], caused by collapse of a building…if the collapse is caused by…the "weight of snow, ice or sleet," which is precisely what C-Mart had reported as the cause of the collapse.

32. In the winter of 2014-2015, Massachusetts received record snowfall, causing many roofs in eastern Massachusetts to collapse.

33. A Boston Globe article reported on March 4, 2015, five days before the collapse of the roof at the insured premises:

> Heavy layers of snow caused some 20 roof collapses across the state Wednesday, including a major failure at a large industrial complex in Hyde Park. The latest collapses brought the total since Feb. 9 to around 210, officials said…. The roof of a vacant building at the former Bayside Expo Center in Dorchester also collapsed, forcing the evacuation of a neighboring office building on Mount Vernon Street that is home to the state's Registry of Vital Records and Statistics and the Dorchester Reporter newspaper…. After a warm day, more snow was on the way

7

> Wednesday evening, a storm that could make this winter the snowiest on record. Total snowfall this season was at 105.7 inches Wednesday morning, less than 2 inches below the record of 107.6 inches, weather service data showed.

34. The foregoing information was available to Public Service and/or Magna Carta after being informed by C-Mart that the roof at the insured premises had collapsed due to the substantial accumulation of snow during the winter of 2014-2015.

35. In the prior winter of 2013-2014, the roof's structural integrity was not compromised by snowfall during that season, which while significant, was not as record-breaking as 2014-2015.

36. Despite this information, Public Service and/or Magna Carta retained the "engineer" to reach conclusions to enable Public Service to deny C-Mart's claim for the roof collapse at the Insured Premises.

37. If the engineer was truly independent and unbiased, he would have addressed the high probability that the heavy accumulated snow caused the collapse.

38. However, the engineer retained by Public Service and/or Magna Carta instead made a number of unsupported and bad faith conclusions suggesting that it was the accumulated wear and tear of the insured premises over a number of years that caused the collapse and not the snowfall.

39. The engineer retained by Public Service and/or Magna Carta, either completely disregarded the evidence or was intentionally not provided with all relevant information by Public Service and/or Magna Carta.

40. Public Service and/or Magna Carta's position was also clearly made in bad faith, and with the intent of wrongfully denying a covered event, as the aforementioned Additional Coverage – Collapse provision in the Policy clearly states that Public Service will "pay for direct

physical loss or damage to [Insured Premises], caused by collapse of a building…if the collapse is caused by…[h]idden decay," which is precisely what Public Service and/or Magna Carta's retained engineer found, namely that the roof of the Insured Premises collapsed as a result of "advanced decay of the wood and metal materials."

41. Public Service and/or Magna Carta had an opportunity to inspect the Insured Premises prior to binding coverage, as it did with the 50 Herald Street property, to uncover any "hazardous condition" that could result in "severe claims and damage to the property."

42. If the decay was observed during such a pre-insurance inspection of the Insured Premises and reported to C-Mart, C-Mart would have had an opportunity to remedy the decay prior to the subject loss and Public Service and/or Magna Carta would have had an opportunity to "re-evaluate [their] underwriting decision" if the decay was not remedied.

43. If the decay was not observed during such a pre-insurance inspection of the Insured Premises, it would establish that the decay was hidden and, therefore, a covered cause of loss under the Policy.

44. By taking the position that the loss was caused by a pre-existing condition, Public Service and/or Magna Carta intentionally acted in bad faith by relying on an engineer's opinion to deny C-Mart's claim.

45. On July 3, 2015, C-Mart, through its agent, William E. Ryan of Pilgrim Strategies, LLC, responded to the coverage denial seeking reconsideration of the decision and again advising Public Service and/or Magna Carta of its position that the accumulation of snow in the winter of 2014-2015 caused the collapse and not routine wear and tear as alleged by expert retained by Public Servcice and/or Magna Carta.

46. On July 21, 2015, C-Mart was advised by Joanna Strazalka, on Magna Carta letterhead, that Public Service would maintain its denial setting forth the same reasoning outlined in Public Service's May 15, 2015 correspondence.

47. If in fact a pre-insurance inspection of the insured premises had been completed and a report drafted, which has not been produced to date despite requests by C-Mart directly to Public Service and/or Magna Carta, it is evident that the engineer retained by Public Service and/or Magna Carta to assess the subject loss, was not provided a copy of that report.

48. If, as the engineer apparently suggested, the "building envelope" had not been properly maintained for decades and there was evidence of ongoing water infiltration, such evidence would have been readily available to Public Service and/or Magna Carta, if the Insured Premises was inspected and when Public Service agreed to provide coverage for the Insured Premises.

49. Moreover, if the alleged severe water damage and the advanced decay of the wood and metal was caused by years of continuous exposure to water, as the engineer suggested, such evidence again should have been detected if the building had been inspected prior to the subject loss.

50. If there was fungi growth as also suggested by the engineer retained by Public Service and/or Magna Carta, that too would likely have been evident to anyone inspecting the insured premises prior to the binding of coverage.

51. Given that the damage to the insured premises was, according to the engineer retained by Public Service and/or Magna Carta, was, at least, partially caused by fungus and decay, excluded conditions, it is highly likely that an inspector would have looked for such issues had the building been inspected.

52. The engineer retained by Public Service and/or Magna Carta also allegedly concluded that there were numerous openings in the roof, the roof hatch and vent openings which reportedly allowed snow and rain to enter the roof over the winter of 2014-2015. That apparently very visible evidence clearly would have been observed in a pre-insurance inspection.

53. The engineer retained by Public Service and/or Magna Carta further suggested that the roofing system and all interior finishes were well beyond the end of their usual service lives. Again, such information would have been available to Public Service and/or Magna Carta prior to agreeing to provide coverage for the Insured Premises.

54. The Illinois Department of Insurance 2016 Annual Report to the Governor indicated on Page 64 that Public Service had a negative net income of $51,262,152.00 in 2015.

55. In July 2016, A.M. Best downgraded and then pulled the ratings of Public Service because it reported a nearly $60,000,000.00 surplus loss for 2015 that included underwriting losses.

56. On March 16, 2017, an Agreed Order of Rehabilitation pertaining to Public Service was entered by Order of the Circuit Court of Cook County, Illinois.

57. Public Service was placed into rehabilitation in order to protect the interests of policyholders, claimants, and other creditors from Public Service's deteriorating financial condition.

58. Upon information and belief, Public Service's decision to deny C-Mart's claim with respect to the Insured Premises, was based, in part, on its deteriorating financial condition and not on a good faith coverage assessment or investigation into the subject loss of March 9, 2015.

59. All of the foregoing, demonstrates that Public Service and/or Magna Carta engaged in immoral, unethical or unscrupulous behavior when conducting its investigation of the subject loss in order to not pay a claim for which the cause of the loss was reasonably clear.

60. On May 9, 2018, C-Mart issued a Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D to Public Service and Magna Carta. A copy of C-Mart's Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D is attached as Exhibit 1.

61. On June 5, 2018, C-Mart issued a Supplemental Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D to Public Service and Magna Carta. A copy of C-Mart's Supplemental Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D is attached as Exhibit 2.

62. On July 3, 2018, AmTrust, as successor in interest to Public Service, issued a response to C-Mart's Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D and Supplemental Demand Pursuant to M.G.L. c. 93A, §§2 and 11, and M.G.L. c. 176D in which AmTrust rejected C'Mart's demand.

## CAUSE OF ACTION

### COUNT I:  UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER M.G.L. c. 93A, §§2 AND 11
(Against All Defendants)

63. C-Mart repeats and realleges Paragraphs 1 through 62 of its Complaint, as if fully set forth herein.

64. C-Mart was, at all material times, engaged in the conduct of a trade or commerce within the Commonwealth of Massachusetts, as those terms are defined and used in M.G.L. c. 93A, §§2 and 11.

65. AmTrust, as successor in interest to Public Service, Public Service and Magna Carta, at all material times, engaged in the conduct of a trade or commerce within the Commonwealth of Massachusetts, as those terms are defined and used in M.G.L. c. 93A, §§2 and 11.

66. As the successor in interest to Public Service, AmTrust is liable for all violations by Public Service with respect to M.G.L. c. 176D, §3(9) and M.G.L. c.93A, §§2 and 11.

67. Public Service, issued an insurance policy to C-Mart covering the Insured Premises located in the Commonwealth of Massachusetts.

68. Public Service and/or Magna Carta, as described herein, engaged in unfair and deceptive insurance claims handling practices, in violation of M.G.L. c. 176D, §3(9) and M.G.L. c.93A, §§2 and 11. Specifically, Public Service and/or Magna Carta violated the following sections of M.G.L. c. 176D, §3(9):

    (a) In disclaiming coverage, Public Service and/or Magna Carta failed to address a specific coverage provision applicable to collapses which included coverage for a collapse caused by the "weight of snow, ice or sleet", thereby "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;"

    (b) In disclaiming coverage, Public Service and/or Magna Carta failed to address a specific coverage provision applicable to collapses which included coverage for a collapse caused by "[h]idden decay", thereby "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;"

    (c) In disclaiming coverage, Public Service and/or Magna Carta intentionally failed to provide its retained engineer with a pre-insurance inspection report, thereby "refusing to pay claims without conducting a reasonable investigation based upon all available information;"

    (d) In disclaiming coverage, Public Service and/or Magna Carta intentionally ignored evidence of numerous similar roof collapses due to a record-setting snowfall and thereby failed "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;"

    (e) In placing insurance coverage for the Insured Premises, Public Service and/or Magna Carta accepted premium with no intent of honoring a claim for damages, and thereby compelling C-Mart "to institute litigation to recover amounts due under an insurance policy by offering substantially less [in this case, nothing] than the amounts ultimately recovered in actions brought by such insureds;"

    (f) In placing insurance coverage for the Insured Premises, Public Service and/or Magna Carta accepted premium with no intent of honoring a claim for damages due to Public Service's deteriorating financial condition, not due a good faith coverage determination or claim investigation, and thereby compelling C-Mart "to institute litigation to recover amounts due under an insurance policy by offering substantially less [in this case, nothing] than the amounts ultimately recovered in actions brought by such insureds;"

    (g) In disclaiming coverage, Public Service and/or Magna Carta knew or should have known of the existing condition of the Insured Premises prior to binding coverage, and yet accepted premium and failed "to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

69. C-Mart sustained a loss of money or property as a direct and proximate result of those unfair and deceptive acts of the Defendants.

70. The unfair and deceptive acts committed by the Defendants were willful and knowing violations of M.G.L. c. 93A, §2.

**WHEREFORE**, the Plaintiff, C-Mart, respectfully requests that this Honorable Court grant it the following relief:

    (a)    Enter complete and final judgment for C-Mart and against AmTrust, as successor in interest to PSI, and/or Magna Carta, jointly and severally, on Count I of the Complaint;

    (b)    Treble the actual damages and award costs and attorney's fees incurred in bringing this action pursuant to M.G.L. c. 93A; and,

    (c)    Any and all relief this Court deems just and proper.

## **JURY DEMAND**

**THE PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,
By the Plaintiff,
C-Mart Herald Street, Inc.,
By its attorneys,

/s/ Peter R. Houston
Peter R. Houston
BBO No.: 681915
phouston@mhg-pc.com
Patrick M. Conran
BBO No.: 551558
pconran@mhg-pc.com
George R. White, Jr.
BBO No.: 645752
gwhite@mhg-pc.com
McGovern, Houston & Ganem, P.C.
21 Merchants Row, 4th Floor
Boston, MA 02109
Date: January 9, 2019                    (617) 723-1444