UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| C-MART HERALD STREET, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10051-IT |
| | * | |
| AMTRUST FINANCIAL SERVICES, | * | |
| INC., as successor in interest to PUBLIC | * | |
| SERVICE INSURANCE COMPANY and | * | |
| MAGNA CARTA COMPANIES, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

January 23, 2020

Before the court is Defendant AmTrust Financial Services, Inc.'s ("AmTrust") Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) [#8]. Plaintiff C-Mart Herald Street, Inc. ("C-Mart"), the insured, alleges in its Complaint [#1] that AmTrust's predecessor in interest, Public Service Insurance Company ("Public Service"), the insurer, engaged in unfair and/or deceptive business practices in violation of a Massachusetts consumer protection law, Mass. Gen. Laws ch. 93A, § 9 ("ch. 93A"). For the reasons explained below, the court finds that C-Mart has sufficiently pleaded a claim of unfair and deceptive practices under ch. 93A. Accordingly, AmTrust's Motion to Dismiss [#8] is DENIED.

**I.   Procedural Background**

C-Mart's Complaint [#1] alleges that Public Service violated ch. 93A by engaging in unfair claim settlement practices as defined in Mass. Gen. Laws ch. 176D, § 3(9) ("ch. 176D"). AmTrust, Public Service's successor in interest, responded by filing the pending Motion to

Dismiss [#8].[1] In its Memorandum in Support of its Motion to Dismiss ("Memorandum") [#9] AmTrust contends that dismissal is required because: (1) the suit is untimely by the two-year statute of limitations for recovery of claims that arise "by virtue of the policy;" (2) the suit is untimely by the four-year statute of limitations for ch. 93A claims; and/or (3) C-Mart failed to state a claim upon which relief can be granted under ch. 93A. Def.'s Mem. 2 [#9].

C-Mart filed an Opposition [#40] to AmTrust's motion to dismiss. At the same time, C-Mart filed a Motion to Strike [#27] exhibits attached to AmTrust's Memorandum [#9]. At a status conference, the parties agreed that, for the purpose of resolving the pending motions to dismiss on the pleadings, the court will only consider an authenticated copy of the Policy and would exclude from consideration the other attachments that AmTrust made to its Memorandum [#9] in support of its motion. See Def.'s Assented-To Mot. for Leave to File ¶¶ 7-10 [#41].[2] The court proceeds accordingly.

## II. Factual Background as Set Forth in the Complaint[3]

C-Mart owned and paid insurance on a premise located at 10-18 Beale St., Quincy, Massachusetts (the "Insured Premises" or "Premises"). Compl. ¶ 1 [#1]. C-Mart insured the Premises under a Commercial Property Insurance Policy (the "Policy") issued by Public Service

---

[1] Defendant Public Service Insurance Company also filed a Motion to Dismiss [#22] in which it asserts that Magna Carta is merely a trade name for Public Service. As discussed during the status conference on April 22, 2019, the parties have agreed to delay addressing the question presented by Magna Carta's motion until after resolution of the issue before the court here. Because the disposition of this Order does not turn on the name of the insurance company, the memorandum refers to the insurance company at the time of the loss as "Public Service."

[2] The court also discussed with counsel separating the different issues presented by the pending motions to dismiss. After further review, the court addresses each ground presented in AmTrust's motion.

[3] For the purposes of this motion to dismiss, the court accepts the complaint's factual allegations as true. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d. 82, 84 (1st Cir. 2015).

2

with effective dates of September 9, 2014, to September 9, 2015. Compl. ¶ 17 [#1]; Policy [#41-1]. C-Mart made timely payments of the full premium. Compl. ¶ 19 [#1].

Public Service did not arrange for or conduct an inspection of the Insured Premises before binding coverage. Compl. ¶ 20 [#1]. However, Public Service did perform such an inspection on another property owned by C-Mart. Compl. ¶ 21 [#1]. In the case of this second property, following the inspection, Public Service identified a number of "hazardous conditions" that Public Service recommended be corrected under threat that failure to correct the conditions would cause Public Service to "re-evaluate their underwriting decision." Compl. ¶ 22 [#1].

The Policy bound Public Service to pay for direct physical loss to the Insured Premises unless the loss was of a type excluded from coverage, as defined in the Policy. Compl. ¶ 23 [#1]; Policy 144 [#41-1]. Included in the exclusions were loss or damage caused by "wear and tear" and "hidden or latent defect or any quality in property that causes it to damage or destroy itself." Compl. ¶ 24 [#1]; Policy 145 [#41-1]. In addition, the Policy excluded coverage for "collapse" except if the collapse was caused by, inter alia, "hidden decay" or "weight of rain that collects on a roof." Compl. ¶ 25 [#1]; Policy 149 [#41-1]. Furthermore, "weight of snow, ice, or sleet" is specifically labelled as a "specified cause[] of loss" covered under the Policy. Compl. ¶ 26 [#1]; Policy 150 [#41-1].

On March 9, 2015, the roof collapsed at the Insured Premises. Compl. ¶ 27 [#1]. C-Mart attributed the collapse to the weight of snow on the roof and immediately reported as much to Public Service. Compl. ¶¶ 27-28 [#1]. This attribution was supported by a record-setting amount of snowfall that had fallen that season and, as reported in the Boston Globe just days before the collapse at the Insured Premises, a spate of roof collapses in the region. Compl. ¶¶ 32-33 [#1].

Public Service retained an engineer to determine the proximate cause of the loss. Compl. ¶ 29 [#1]. The engineer's report found that the roof collapse was due to a pre-existing condition, which Public Service alleged to be a coverage exclusion. Compl. ¶ 30 [#1]. However, the engineer's report failed to address the high likelihood that the record snowfall contributed towards the roof collapse. Compl. ¶ 37 [#1]. On May 15, 2015, Public Service disclaimed coverage for the loss on the basis of the findings of the engineer. Compl. ¶ 30 [#1]. In so doing, Public Service failed to address the policy provision that covered collapse due to the "weight of snow, ice or sleet." Compl. ¶ 68 [#1]; Policy 150 [#41-1].

C-Mart alleges that the decision to deny its claim with respect to the Insured Premises was not based upon a good-faith coverage assessment, but on Public Service's own financial self-interest. Compl. ¶ 58 [#1]. In support of this assertion, C-Mart avers that Public Service reported an over $50 million loss in 2015 and that these losses resulted in the company receiving downgraded ratings and being subject to an Agreed Order of Rehabilitation in order "to protect the interests of policyholders, claimants, and other creditors" in light of Public Service's "deteriorating financial condition." Compl. ¶¶ 54-58 [#1].

### III.   DISCUSSION

To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (internal citations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim

for relief. Id. Although the court ordinarily only considers the complaint's plausible factual allegations on a motion to dismiss, the First Circuit has recognized a narrow exception to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the parties do not dispute the authenticity of the Policy [#41-1] and accede to its consideration in resolving the pending motion.

1. Whether C-Mart has Sufficiently Pleaded a Claim Under ch. 93A

C-Mart brings this claim based on ch. 93A, § 9, which provides a cause of action to persons "whose rights are affected by another person violating the provisions" of another Massachusetts statute, ch. 176D. Mass. Gen. Laws ch. 93A, § 9. Chapter 176D in turn defines "unfair claim settlement practices" as constituting any one of fourteen different practices, including:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

. . .

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

. . .

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

. . .

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Mass. Gen. Laws ch. 176D, § 3. These provisions "were enacted to encourage settlement of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief." Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 567-68 (2001) (citation omitted). An insurer who has violated ch. 176D, § 3 has, "by definition, [] violated the prohibition in G.L. c. 93A, § 2, against the commission of unfair or deceptive acts or practices." Id. at 564 (collecting cases).

AmTrust argues that C-Mart's factual allegations constitute, at most, "a good faith dispute as to whether money is owed" and "is not the stuff of which a chapter 93A claim is made." Def.'s Mem. 11 [#9] (citing Duclersaint v. Fed. Nat'l. Mortg. Ass'n., 427 Mass. 809, 814 (1998) ("A good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a Chapter 93A claim is made")). AmTrust argues that the denial of the claim was based upon "'a plausible, reasoned legal position' that coverage is not afforded under the policy" in light of the report provided by the expert retained by Public Service. Id. at 12-14 (citing Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 343 (1994)).[4]

Insurance companies can certainly deny a claim for coverage without automatically becoming liable for a violation under ch. 93A and Defendant's averment that it reasonably and lawfully denied a claim may ultimately prove to be true. However, the question now before the

---

[4] The Guity decision and others cited by AmTrust arise from motions for summary judgment or trial verdicts, not motions for judgment on the pleadings. See Def.'s Mem. 11-12 [#9] (citing Guity v. Commerce Ins. Co., 36 Mass. App. Ct. 339, 341 (1994) (appeal of bench trial verdict); Duclersaint v. Fed. Nat'l. Mortg. Ass'n, 427 Mass. 809 (1998) (appeal of summary judgment decision); Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462 (1995) (appeal of summary judgment decision); Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7 (1989) (appeal of summary judgment decision); Riley v. Aetna Life & Cas. Co., 31 Mass. App. Ct. 910 (1991) (appeal of summary judgment decision); Peckham v. Cont'l Cas. Ins. Co., 895 F.2d 830, 832 (1st Cir. 1990) (appeal of trial verdict)).

court is only whether the facts, as alleged, give rise to a ch. 93A claim. More specifically, the burden on C-Mart is to file a complaint that gives "fair notice" that C-Mart is bringing a ch. 93A claim and the plausible "grounds upon which [the claim] rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Twombly, 550 U.S. at 570. C-Mart's complaint satisfies this obligation if the court takes the factual allegations as true. C-Mart alleges that, in denying the claim, Public Service failed to address a provision of the Policy that covered collapses caused by the weight of snow or hidden decay, failed to procure an engineering report that addressed the real likelihood that the collapse was caused by the weight of snow on the roof, and attributed the damage to pre-existing conditions without a suitable basis for doing so. C-Mart further alleges that Public Service declined coverage so as to compel C-Mart to institute litigation to recover the proceeds of the policy it was obviously owed and that the denial of the claim arose out of a concern for Public Service's own financial condition and not Public Service's obligations to C-Mart under the terms of the Policy. These factual allegations, if taken as true, "support the legal conclusion that underlies" C-Mart's claim that Public Service violated the provisions of ch. 176D and thus is liable under ch. 93A. Cardigan Mountain Sch., 787 F.3d at 84.[5] Of course, whether these allegations prove to be true is a question for another day.

---

[5] AmTrust's Memorandum [#9] dedicates a section to the argument that Plaintiff's ch. 93A claim must fail, as a matter of law, because Public Service's failure to inspect a property before binding coverage cannot constitute an unfair or deceptive practice in violation of ch. 93A. Def.'s Mem. 15-17 [#9]. If the basis for Plaintiff's ch. 93A claim was Public Service's failure to perform an inspection prior to binding coverage, Defendant's argument may be persuasive; a failure to perform an inspection prior to binding coverage does not necessarily mean that the insurer wrote a policy without knowledge of what was being covered. Plaintiff does not rest its argument on the absence of a property inspection before coverage was issued but instead, as discussed above, raises a number of allegations, that if true, state a claim for relief under ch. 93A.

2. <u>Whether C-Mart's Claims are Time-Barred Under the Two-Year Statute of Limitations for Insurance Claims</u>

AmTrust argues that C-Mart's claim must be dismissed because it is barred by the two-year statute of limitations provision found in the Policy. In pertinent part, the Policy provides the following limitation: "No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred . . . ." Policy 123 [#41-1]. This provision is part of a standard form set forth by the Massachusetts Legislature for all policies, such as the Policy here, that insure against property loss caused by fire. <u>See</u> Mass. Gen. Laws ch. 175, § 99.

However, another Massachusetts statute, Mass. Gen. Laws ch. 260, § 5A, creates a four-year statute of limitations for claims that arise from Massachusetts consumer protection statutes, explicitly identifying suits, such as this one, that are grounded in chs. 93A and 176D. Because C-Mart has sufficiently pleaded a ch. 93A violation, the court finds that the statute of limitations for ch. 93A claims should apply. In coming to this conclusion, the court is persuaded by the reasoning set forth by the Appeals Court of Massachusetts in <u>Schwartz v. Travelers Indem. Co.</u>, 50 Mass. App. Ct. 672, 677 (2001). There, the court held that the two-year limitation period set forth in the standard form contract must give way to the four-year limitation period for ch. 93A claims. To do otherwise, the court found, "would make meaningless the specific inclusion of c. 176D actions in c. 260, § 5A, since all claims against the insurer, even those under c. 176D, if viewed broadly, can be seen as claims brought by virtue of the policy." <u>Schwartz</u>, 50 Mass. App. Ct. at 677 (2001) (internal citation omitted).

AmTrust cites <u>L & B Realty, Inc. v. Certuse Adjustment, Inc.</u>, 77 Mass. App. Ct. 1108 (2010), in support of its position since the court there ultimately applied the two-year limitation

period. However, in L & B Realty, the Massachusetts Appeals court summarily adopted the reasoning elucidated in Schwartz by holding that where the ch. 93A claim was "predicated entirely upon the defendants' breaches of the underlying insurance policy" and was not "grounded" in violations of Mass Gen. Laws ch. 176, the claim was subject to the two-year limitation. Id. Plaintiff here has relied explicitly on violations of ch. 176 as the basis of its claim. Accordingly, since the court concludes that C-Mart has sufficiently pleaded its ch. 93A claim, the claim is concordantly subject to ch. 93A's four-year statute of limitations.

### 3. Whether C-Mart's Claims are Time-Barred Under the Four-Year Statute of Limitations for ch. 93A Claims

Under Massachusetts law, "the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [the plaintiff's] injury." Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990). Judgment on the pleadings based on the statute of limitations is appropriate when the pleadings, construed in the light most flattering to the non-moving party, leave no plausible basis for believing that the challenged claim is timely. Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 (1st Cir. 2011). AmTrust argues here that C-Mart's ch. 93A claim accrued on "August 27, 2014 or at the latest on September 9, 2014" because that is when C-Mart became aware that "Defendant inspected one [C-Mart] property, but not the subject property." Def.'s Mem. 10 [#9]. The argument that C-Mart could have been put on notice that Public Service had injured C-Mart before the loss even occurred is difficult to follow. In any event, just as failure to perform a physical inspection of a premises before binding coverage does not, by itself, constitute a violation of ch. 93A on the facts alleged here, failing to perform this pre-coverage inspection does not, by itself, start the running of the four-year statute of limitation. Accordingly, because

9

this suit was filed within four years of when Plaintiff was on notice that someone may have injured it, the suit is timely.

### IV.    Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss Plaintiff's Complaint [#8] is DENIED. Based on the parties' stipulation made in open court that the court may resolve the motion to dismiss upon only evaluating the Complaint [#1] and the authenticated Policy [#41-1], C-Mart's Motion to Strike [#27] is GRANTED. The clerk shall schedule a status conference to discuss next steps in this proceeding. At the status conference, counsel shall be prepared to discuss Defendant Magna Carta Companies' pending Motion to Dismiss [#22].

IT IS SO ORDERED.

Date: January 23, 2020                         /s/ Indira Talwani
                                               United States District Judge